# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACK JORDAN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 17-2702 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 6, 9, 14 |
| | : | | |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### Denying Plaintiff's Motion to Disqualify; Granting Defendant's Motion for Extension of Time to Answer or Otherwise Respond to Complaint; and Denying Without Prejudice Defendant's Motion for Protective Order

## I. INTRODUCTION

Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff Jack Jordan filed this action seeking records from Defendant U.S. Department of Justice ("DOJ") related to *Jordan v. U.S. Dep't of Labor*, 16-cv-1868 (D.D.C.), an earlier FOIA action filed by Mr. Jordan that was also before this Court. Specifically, Mr. Jordan requests (1) any records describing the DOJ's expenditure of resources in connection with that action and (2) any records pertaining "directly or indirectly" to that action, to Mr. Jordan, or to this judge. Now before the Court are three motions: Mr. Jordan's motion to disqualify this judge, the DOJ's motion for an extension of time to respond to the complaint, and the DOJ's motion for a protective order barring discovery in this case. For the reasons explained below, this Court grants the DOJ's motion for an extension of time, but denies Mr. Jordan's motion to disqualify and the DOJ's motion for a protective order.

## II. FACTUAL BACKGROUND

This Court presumes familiarity with its prior Opinions in Mr. Jordan's related litigation in *Jordan v. U.S. Dep't of Labor*, 16-cv-1868 (D.D.C.) ("2016 Action"), which commenced on September 19, 2016. *See generally Jordan v. U.S. Dep't of Labor*, No. 16-1868, 2018 WL 1567584 (D.D.C. Mar. 30, 2018); *Jordan v. U.S. Dep't of Labor*, 273 F. Supp. 3d 214 (D.D.C. 2017). In that action, Mr. Jordan sought to compel the U.S. Department of Labor to disclose the unredacted versions of two emails that related to a Defense Base Act case involving Mr. Jordan's wife and DynCorp International, Inc. *See Jordan*, 2018 WL 1567584, at *1; *Jordan*, 273 F. Supp. 3d at 219–20. In resolving the 2016 Action, this Court requested and received the disputed emails for *in camera* inspection to determine whether they were protected by any FOIA exemptions. *See Jordan*, 2018 WL 1567584, at *2; *Jordan*, 273 F. Supp. 3d at 227. The Court concluded that one of the two emails was protected by a FOIA exemption; however, the Court ordered the Department of Labor to release the other email.[1] *See Jordan*, 2018 WL 1567584, at *2; *Jordan*, 273 F. Supp. 3d at 232.

While that matter was pending, Mr. Jordan commenced the present action in December 2017. Here, Mr. Jordan seeks records related to the 2016 Action, including any accounting of the time expended by specified attorneys working on that matter and any records pertaining "directly or indirectly" to that matter, to Mr. Jordan, or to this judge. *See* Compl. ¶¶ 5–9, ECF No. 1. Mr. Jordan believes that such records may uncover "multiple federal crimes." *See id.* ¶ 1.

---

[1] Among other things, the Court also held that there were no grounds to compel this judge's recusal. *See Jordan*, 2018 WL 1567584, at *6, 10. The DOL has now released the non-exempt email to Mr. Jordan. *See* Email from Jason Cohen to Pl. (Apr. 4, 2018), ECF No. 21-3; Emails between Robert Huber, William Imbrie, and Darin Powers (July 31, 2013), ECF No. 21-1. The Court's decisions in the prior *Jordan* matter are presently on appeal to the D.C. Circuit. *See* Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to U.S. Court of Appeals, ECF No. 64.

The DOJ requested a thirty-day extension of time to file its response to Mr. Jordan's complaint. *See* Def.'s Mot. for Extension of Time to Answer ("Def.'s Mot. for Extension") at 1, ECF No. 6. This Court did not rule on the motion for an extension, but the DOJ submitted its answer within thirty days after the initial filing deadline. *See* Def.'s Answer ("Answer") at 1, ECF No. 18.

In that window of time, Mr. Jordan filed a motion to disqualify this judge under the recusal statutes 28 U.S.C. §§ 144 and 455(a)–(b). *See generally* Pl.'s Mot. to Disqualify ("Mot. to Disqualify"), ECF No. 9. Mr. Jordan argues that this judge should be disqualified because of purported bias or prejudice toward Mr. Jordan based on the 2016 Action—alleged preconceptions that would render this judge unable to fairly decide the present action. *Id.* Mr. Jordan repeats many of the allegations that he lodged in a rejected recusal motion submitted in the prior action. *See Jordan*, 2018 WL 1567584, at \*3–6; *compare* Mot. to Disqualify at 1, 14, 20, 22, 28, 30–31, 33–34, 36, 40, *and* Pl.'s Suppl. to Mot. to Disqualify ("Pl.'s 1st Suppl.") at 1–7, ECF No. 20, *and* Pl.'s 2d Suppl. to Mot. to Disqualify ("Pl.'s 2d Suppl.") at 3–13, ECF No. 21, *with Jordan*, 2018 WL 1567584, at \*4, *and* Pl.'s Mot. to Disqualify at 1–45, No. 16-cv-1868, ECF No. 55.

Also in that window of time, the DOJ filed a motion for a protective order barring all discovery in this FOIA action. *See generally* Def.'s Mem. Supp. Mot. for Protective Order ("Def.'s Mem."), ECF No. 14. According to the DOJ, Mr. Jordan "appears to have included Requests for Interrogatories and Document Production" along with the mailing of a copy of his Motion to Disqualify Judge Contreras. *See* Mot. to Disqualify at 33–34; Def.'s Mem. at 1. However, neither the DOJ nor Mr. Jordan appended any such request to any filing presently before this Court. *See generally* Def.'s Mem. Observing that discovery is generally limited in

FOIA actions, the DOJ contends that no discovery should be permitted in the present action until the DOJ files any dispositive motions. *See* Def.'s Mem. at 4; Def.'s Reply Supp. Def.'s Mem. ("Def.'s Reply") at 1, ECF No. 19. All three motions are now ripe for decision.

### III. ANALYSIS

Before this Court are three different motions. Mr. Jordan filed a "Motion to Disqualify Judge Contreras" (ECF No. 9), arguing that this judge should be disqualified for holding purported bias or prejudice toward Mr. Jordan. The DOJ filed a "Motion for Extension of Time to Answer or Otherwise Respond to Complaint" (ECF No. 6) to extend its deadline to respond to Mr. Jordan's complaint. The DOJ also filed a "Motion for Protective Order" (ECF No. 14) to bar discovery in this action. For the following reasons, this Court denies Mr. Jordan's motion to disqualify, grants the DOJ's motion for an extension of time to answer or otherwise respond to the complaint, and denies without prejudice the DOJ's motion for a protective order.

#### A. Plaintiff's Motion to Disqualify

Mr. Jordan requests that this judge recuse himself from the present case on grounds such as bias, partiality, threatening behavior, and criminal conduct. This Court denies Mr. Jordan's motion because it finds no basis for recusal.

"[F]ederal judges must maintain the appearance of impartiality" because "[d]eference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges." *United States v. Microsoft Corp.*, 253 F.3d 34, 115 (D.C. Cir. 2001) (quoting Code of Conduct Canon 1 cmt.). Accordingly, the United States Constitution, federal statutory law, and codes of judicial conduct each prescribe recusal standards under which a judge may—or, under limited circumstances, must—remove himself from a case to protect the integrity of the proceedings. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876–77

(2009); *Microsoft Corp.*, 253 F.3d at 113–15. The Supreme Court has explained that due process requires recusal "when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).[2] Thus, "[t]he Court asks not whether a judge harbors an actual, subjective bias, but instead whether . . . the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (quoting *Caperton*, 556 U.S. at 881). Under this framework, the Supreme Court has recognized only very few circumstances in which the appearance of bias mandates recusal. *See, e.g.*, *Caperton*, 556 U.S. at 872 (holding that due process required recusal where a party was a substantial donor to judge's election campaign); *Mayberry v. Pennsylvania*, 400 U.S. 455, 466 (1971) (holding that it may violate due process when a judge presides over a criminal contempt case that resulted from the defendant's hostility toward the judge); *Tumey v. Ohio*, 273 U.S. 510, 523–24 (1927) (holding that a judge may not preside over a case in which he has a "direct, personal, substantial, pecuniary interest"). However, "most questions concerning a judge's qualifications to hear a case are not constitutional ones." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).

---

[2] The Supreme Court described this standard by reference to the Fourteenth Amendment Due Process Clause, which does not apply to the federal government. *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). This Court presumes, however, that this same standard applies to the federal courts through the Fifth Amendment. *See S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 542 n.21 (1987) (explaining that the Fifth Amendment Due Process Clause, which applies to the federal government, is generally interpreted consistent with the Fourteenth Amendment Due Process Clause); *cf. Hurd v. Hodge*, 334 U.S. 24, 35–36 (1948) ("We cannot presume that the public policy of the United States manifests a lesser concern for the protection of such basic rights against discriminatory action of federal courts than against such action taken by the courts of the States.").

Recusal of federal district court judges is more often discussed by reference to 28 U.S.C. §§ 144 and 455.[3] *See, e.g.*, *SEC v. Loving Spirit Found., Inc.*, 392 F.3d 486, 492–93 (D.C. Cir. 2004). Section 144 provides that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein." 28 U.S.C. § 144. But "the mere fact that a party has filed a [Section] 144 motion, accompanied by the requisite affidavit . . . does not automatically result in the challenged judge's disqualification." *Strange v. Islamic Republic of Iran*, 46 F. Supp. 3d 78, 81 (D.D.C. 2014) (quoting *Robertson v. Cartinhour*, 691 F. Supp. 2d 65, 77 (D.D.C. 2010)); *see also United States v. Miller*, 355 F. Supp. 2d 404, 405 (D.D.C. 2005) ("[D]isqualification is not automatic upon submission of affidavit and certificate . . . ."). Rather, "the judge must review [the affidavit] for legal sufficiency . . . and construe [it] strictly against the movant to prevent abuse." *Miller*, 355 F. Supp. 2d at 405 (citing *United States v. Haldeman*, 559 F.3d 31, 135 (D.C. Cir. 1976); *James v. District of Columbia*, 191 F. Supp. 2d 44, 46–47 (D.D.C. 2002)). While the judge "must accept the affidavit's factual allegations as true even if the judge knows them to be false," the affidavit still "must state facts as opposed to conclusions, and . . . mere rumors and gossip are not enough." *Loving Spirit Found.*, 392 F.3d at 496 (citing *Berger v. United States*, 255 U.S. 22, 35–36 (1921)); *Strange*, 46 F. Supp. 3d at 81 (citing *United States v. Hanrahan*, 248 F. Supp. 471, 475 (D.D.C. 1965)). An affidavit is sufficient as a matter of law when it states material facts with particularity, it would convince a reasonable person that a bias

---

[3] In its previous Opinion, this Court did not assess Mr. Jordan's motion to disqualify under Section 144 because he failed to "file[] any affidavit along with his recusal request," as required by statute. *Jordan*, 2018 WL 1567584, at *4 n.3. In this case, Mr. Jordan has filed an affidavit with his motion to disqualify; thus, this Court considers the motion under both Section 455 and Section 144.

exists, and the alleged bias is personal in nature and stems from an extrajudicial source. *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1301 (D.C. Cir. 1988); *James*, 191 F. Supp. 2d at 47 (citations omitted).

Similarly, recusals under Section 455 focus on standards of personal bias and partiality. *See* 28 U.S.C. § 455. Section 455(a) states that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," unless the parties waive the grounds for disqualification. *Id.* § 455(a), (e). "The standard for disqualification under [Section] 455(a) is an objective one." *Microsoft Corp.*, 253 F.3d at 114. "The question is whether a reasonable and informed observer would question the judge's impartiality." *Id.* (citations omitted). Further, Section 455(b) enumerates specific grounds that require a judge to recuse, such as where he has "an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b), (b)(5)(iii). Even though recusal may be justified when a judge possesses interests that "tempt [the judge] to disregard neutrality," "bald allegations of bias or prejudice" are insufficient. *Caperton*, 556 U.S. at 878 (finding disqualification appropriate when judge had direct financial interests in the proceeding's outcome); *Karim-Panahi v. U.S. Cong.*, 105 Fed. App'x 270, 275 (D.C. Cir. 2004) (affirming district court's denial of motion to disqualify judge because the record did not reflect the appearance of bias or prejudice).

To compel recusal under Section 455(a), the movant must demonstrate that the judge's reliance on "'an extrajudicial source' . . . creates an *appearance* of partiality." To compel recusal under Section 455(b), the movant must demonstrate that the judge has "*actual* bias or prejudice based upon an extrajudicial source." *Tripp v. Exec. Office of the President*, 104 F. Supp. 2d 30, 34 (D.D.C. 2000) (emphasis added). Where no extrajudicial source is involved, the movant must show a "deep-seated favoritism or antagonism that would make fair judgment

7

impossible." *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Thus, judicial rulings and opinions formed by the judge during the course of proceedings generally do not support recusal. *See Liteky*, 510 U.S. at 555. Indeed, this Circuit has declared that "[a] judge should not recuse himself based upon conclusory, unsupported or tenuous allegations." *In re Kaminski*, 960 F.2d 1062, 1065 n.3 (D.C. Cir. 1992) (per curiam) (citation omitted); *see SEC v. Bilzerian*, 729 F. Supp. 2d 19, 22 (D.D.C. 2010) ("[A] judge has as much an obligation *not* to recuse himself where there is no reason to do so as he does to recuse himself when proper.") (citation omitted).

In the present motion, Mr. Jordan makes various allegations of judicial bias and partiality, including that this judge: (1) "knowingly and willfully colluded with the DOJ"; (2) knowingly engaged in "entirely illegal" *in camera* review of disputed FOIA documents; (3) "designed a prohibited *ex parte* communication" in order to "prevent [Mr. Jordan] from obtaining highly relevant evidence"; (4) "misrepresented many facts that were material"; (5) made "statements and threats" that "crossed the line into criminal intimidation," including "expressly threaten[ing] Mr. Jordan] with sanctions"; (6) possessed disqualifying "personal knowledge of disputed evidentiary facts concerning the case"; (7) "has a personal interest in helping the DOJ conceal . . . records and evidence"; and (8) "committed crimes" in violations of 18 U.S.C. §§ 1001, 1343 and 371. *See* Mot. to Disqualify at 14–40; Decl. of Jack Jordan ("Jordan Decl.") ¶¶ 6–26, ECF No. 9-2; Pl.'s 1st Suppl. at 1–7; Pl.'s 2d Suppl. at 3–13. Because the substantive standard for finding "personal bias or prejudice" through the affidavit is essentially the same under Sections 144 and 455, *see Klayman v. Judicial Watch, Inc.*, 278 F. Supp. 3d 252, 257 (D.D.C. 2017), this Court jointly applies that standard to the present facts.

8

The Court briefly addresses some of Mr. Jordan's more pointed contentions, some of which repeat the allegations made in Mr. Jordan's motion to disqualify this judge in the 2016 Action. *See Jordan*, 2018 WL 1567584, at *4–5. First, Mr. Jordan alleges that this judge's use of *in camera* review of the unredacted emails was "unauthorized" and "illegal." Mot. to Disqualify at 20–21. But this judge's use of *in camera* review was both authorized and legal. "Congress provide[s] district courts the option to conduct *in camera* review under [the] FOIA." *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011) (citing *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009)). And the D.C. Circuit has clarified that "[a] judge has discretion to order *in camera* inspection on the basis of an uneasiness, on a doubt that he wants satisfied before he takes responsibility for a de novo determination." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (citing *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (per curiam)). Because this judge's use of *in camera* review of the emails was permissible, Mr. Jordan's allegation is insufficient to reasonably question this judge's impartiality and does not warrant this judge's recusal. *See James*, 191 F. Supp. 2d at 47 (citation omitted); *Microsoft Corp.*, 253 F.3d at 114.

Second, Mr. Jordan contends that this judge "*directly* and *explicitly* harassed" and "threatened to sanction" him, which amounted to "criminal intimidation." Mot. to Disqualify at 31; Pl.'s 1st Suppl. at 6; Pl.'s 2d Suppl. at 3. Mr. Jordan alludes to this Court's admonishment of him in its prior Opinion, speculating that this judge and various agency personnel plotted to violate the FOIA together. *See* Mot. to Disqualify at 30–31. But this Court continues to stand by its reproach as entirely appropriate. Its remarks did not rise to the level of "deep-seated favoritism or antagonism" that would warrant recusal. *See Liteky*, 510 U.S. at 555 ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to,

9

counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."); *cf. Berger*, 255 U.S. at 28–29, 43 (finding judge's categorical remarks about defendants and "practically all the Germans in this country" disqualifying). It follows that this allegation does not provide a basis for recusal.

Third, Mr. Jordan contends that this judge has a "personal interest" in helping the DOJ "conceal[] material facts" in violation of Section 455(b)(5)(iii). Mot. to Disqualify at 34–36; *see* 28 U.S.C. § 455(b)(5)(iii); Pl.'s 1st Suppl. at 7; Pl.'s 2d Suppl. at 8–12. It is true that a judge should recuse if he or she has "an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(iii). However, Mr. Jordan offers only bald allegations. He neither identifies what this judge's purported personal interest in the outcome of this proceeding might be nor explains how that alleged personal interest might undermine this judge's ability to fairly preside over the matter. Such general and conclusory allegations are insufficient to demonstrate actual bias or prejudice as required by Section 455(b). *See Karim-Panahi*, 105 Fed. App'x at 275; *Tripp*, 104 F. Supp. 2d at 34. Therefore, this allegation does not warrant recusal.

Finally, Mr. Jordan asserts that this judge "committed crimes" under 18 U.S.C. §§ 371, 1001, 1341, 1512, and 1519. *See* Mot. to Disqualify at 36–41; Pl.'s Reply to Def.'s Opp'n to Mot. to Disqualify ("Pl.'s Reply to Opp'n") at 5, 8, ECF No. 12; Pl.'s 2d Suppl. at 1–2. These bald allegations yield no evidence of this judge's alleged bias or prejudice. They are thus insufficient to compel recusal. *See Karim-Panahi*, 105 Fed. App'x at 275 (holding that "bald allegations" are insufficient to disqualify judge); *United States v. Nixon*, 267 F. Supp. 3d 140,

152–53 (D.D.C. 2017) ("[S]uch speculation cannot support [a] request for recusal.") (citation omitted).[4]

In sum, Mr. Jordan has failed to meet the recusal standards under Sections 144 and 455, let alone the more stringent constitutional standard. *See* 28 U.S.C. §§ 144, 455. An objective observer would not question this judge's impartiality under the present circumstances because Mr. Jordan has not shown the appearance or actual existence of a personal or extrajudicial bias. *See id.* §§ 144, 455; *Liberty Lobby*, 838 F.2d at 1301; *Tripp*, 104 F. Supp. 2d at 34. Furthermore, Mr. Jordan has not shown that this Court acted with a level of "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Instead, Mr. Jordan makes "conclusory, unsupported [and] tenuous allegations" that are wanting of facts. *Kaminski*, 960 F.2d at 1065 n.3 (citation omitted). Insofar as judges have a duty to recuse themselves when partiality exists, judges have an equal duty to not recuse themselves when there is no basis for recusal.[5] *See Bilzerian*, 729 F. Supp. 2d at 22. This judge is no exception. Accordingly, Mr. Jordan's motion requesting that this judge recuse himself is denied.

---

[4] It bears mentioning that Mr. Jordan cannot bring his own private action to enforce these provisions of the criminal code. *See, e.g.*, *Lee v. U.S. Agency for Int'l Dev.*, 859 F.3d 74, 78 (D.C. Cir. 2017), *reh'g denied*, No. 16-5276, 2017 U.S. App. LEXIS 14935 (D.C. Cir. Aug. 10, 2017) (per curiam) (affirming dismissal of plaintiff's claim brought under 18 U.S.C. § 1001); *Saunders v. Davis*, No. 15-cv-2026, 2016 U.S. Dist. LEXIS 125304, at *11, *42–43 (D.D.C. Sept. 15, 2016) (dismissing plaintiff's claim brought under 18 U.S.C. § 1343); *Peavey v. Holder*, 657 F. Supp. 2d 180, 190–91 (D.D.C. 2009) (dismissing plaintiff's claim brought under 18 U.S.C. §§ 1512 and 1519); *Rockefeller v. U.S. Court of Appeals Office, for the Tenth Circuit Judges*, 248 F. Supp. 2d 17, 20 (D.D.C. 2003) (dismissing plaintiff's claim brought under 18 U.S.C. § 371).

[5] Because the duty is on the judge to not recuse when inappropriate, Mr. Jordan misses the point by arguing that the DOJ's silence on some of Mr. Jordan's allegations raises a presumption of guilt. *See* Mot. to Disqualify at 22–29; Pl.'s 2d Supp. at 13–14.

### B. Defendant's Motion for Extension of Time to Answer or Otherwise Respond to Complaint

On February 7, 2018, the DOJ filed a motion for a thirty-day extension of time to submit its answer or otherwise respond to the complaint, which was initially due on February 12, 2018. *See* Def.'s Mot. for Extension at 1. The DOJ accordingly filed its answer on March 14, 2018. *See* Answer at 1. As explained below, the Court grants the DOJ's requested extension.

A court may extend a filing deadline when the moving party requests an extension before the original filing deadline and shows good cause. *See* Fed. R. Civ. P. 6(b)(1). Courts have discretion to determine whether a movant has shown good cause. *See Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005). "[R]equests for extensions of short durations are routine" in this district. *See Jordan*, 2018 WL 1567584, at *8. "Also routine in this District is the fact that most motions are pending for several months before being resolved due to the press of the Court's business and the volume of substantive motions filed." *Jordan*, 2018 WL 1567584, at *8; *cf. Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 151 (D.C. Cir. 1996) (explaining a district court's "prerogative to manage its docket, and its discretion to determine how best to accomplish this goal") (citation omitted).

Here, the DOJ requested an extension before the original answer deadline. *See* Def.'s Mot. for Extension at 1; Answer at 1. The inquiry therefore turns on whether the DOJ has shown good cause. *See* Fed. R. Civ. P. 6(b)(1). The DOJ posits that an extension would "provide sufficient time to complete [the] process" of "gathering and reviewing the documents at issue," "draft[ing]," and "review[ing] an appropriate response to the Complaint." *See* Def.'s Mot. for Extension at 1. Mr. Jordan opposes the motion, asserting that the DOJ's motion "did not even describe good cause" or "any cause." Pl.'s Opp'n to Def.'s Mot. for Extension of Time ("Pl.'s Opp'n to Def.'s Mot. for Extension") at 3–4. Mr. Jordan also argues that the good cause

standard in FOIA matters is stricter than the standards promulgated under Fed. R. Civ. P. 6(b)(1). *See id.* at 5–6. Contrary to Mr. Jordan's view, the Court finds that the DOJ has shown good cause. The

Court is presented with a routine motion for an extension of a short duration. *See Smith*, 430 F.3d at 456. And the DOJ has articulated appropriate reasons for requesting an extension. *See Jordan*, 273 F. Supp. 3d at 241–42 ("[T]he limited information provided was more than sufficient to justify the routine relief sought—a 30 day extension at the beginning of a FOIA case."). Furthermore, Mr. Jordan will not suffer any prejudice because the short extension would have had little, if any, impact on the judicial proceedings of an action still in its early stages.[6] Accordingly, this Court grants the DOJ's motion.

### C. Defendant's Motion for Protective Order

Finally, the Court considers the DOJ's motion for a protective order barring all discovery in this case. *See generally* Def.'s Mem., ECF No. 14. The DOJ states that it received "Requests for Interrogatories and Document Production" along with a mailed copy of Mr. Jordan's motion to disqualify. *See* Def.'s Mem. at 1. But no discovery request has been submitted to this Court by either party. *See generally* Def.'s Mem. The Court denies the DOJ's motion at this time for the following reasons.

In this Circuit, a district court has discretion to limit or bar discovery in FOIA actions. *See Campbell v. U.S. Dep't of Justice*, 231 F. Supp. 2d 1, 7 (D.C. Cir. 2002); *see also* LCvR 16.3(b) & cmt., 26.2(a) & cmt. (modifying Federal Rules of Civil Procedure to exempt FOIA

---

[6] Indeed, if either party has delayed this litigation, it is Mr. Jordan, who filed a recusal motion and supplemental memoranda in support of that motion that primarily repeated arguments that this Court rejected in the prior related litigation. Because this Court had to resolve Mr. Jordan's motion before it could act on any other pending motions, Mr. Jordan's motion caused more delay than the Government's extension motion that he opposes.

actions from initial disclosure requirements and duty to develop a discovery plan). It may do so by entering a protective order upon a party's motion, even at an early stage of a proceeding. *See Bureau of Nat'l Affairs, Inc. v. IRS*, 24 F. Supp. 2d 90, 91–92 (D.D.C. 1998) (granting protective order after government defendant filed its answer, motion for summary judgment, and a *Vaughn* index); *Farese v. U.S. Dep't of Justice*, No. 86-5528, 1987 U.S. App. LEXIS 14248, at *8–9 (D.C. Cir. 1987) (per curiam) (affirming grant of protective order before government defendant filed its affidavits because discovery "essentially duplicated [plaintiff's] FOIA requests"). A movant requesting a protective order must demonstrate good cause; show that "annoyance, embarrassment, oppression, or undue burden or expense" would result absent the order; and certify that the movant has conferred in good faith with the non-movant to resolve the dispute without court interference. Fed. R. Civ. P. 26(c); *see Campbell*, 231 F. Supp. 2d at 13. A district court has discretion to determine what constitutes good cause, but mere inconvenience or expense is insufficient. *See Campbell*, 231 F. Supp. 2d at 7 (citations omitted). Simply put, the district court must be able to "articulate specific facts" to justify its grant of a protective order. *Id.* (citing *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1411 (D.C. Cir. 1996)).

Mr. Jordan and the DOJ appear to agree that discovery may occur in some FOIA actions.[7] *See* Pl.'s Opp'n to Protective Order at 4–5; Def.'s Reply at 1. However, the DOJ

---

[7] The DOJ asserts that discovery is "rare and disfavored" in FOIA actions. Def.'s Mem. at 4; Def.'s Reply at 1. But this Court cannot accept this blanket proposition as a basis for granting a protective order barring all discovery at the very early stage of a FOIA action in which it is not yet known whether discovery may be warranted. Courts in this Circuit have generally concluded that "discovery is inappropriate" only after the filing of a motion for summary judgment, when a court can declare that "no factual dispute remains." *Pub. Citizen Health Research Grp. v. FDA*, 997 F. Supp. 56, 72–73 (D.D.C. 1998); *see, e.g., SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) ("The district court held that the . . . affidavits were sufficient to justify summary judgment on the adequacy of its efforts, and therefore denied discovery."); *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) ("[T]he district judge has discretion to forgo discovery and award summary judgment on the basis of affidavits"). Here, no

argues that a protective order should be issued barring discovery in this action because the discovery requests sent by Mr. Jordan "do not seek information that is relevant to the resolution of this FOIA action" and because "[Mr. Jordan] cannot show any basis for discovery that is sometimes allowed in FOIA cases." Def.'s Mem. at 4–5. The DOJ also contends that discovery should be barred because the DOJ had not yet filed a dispositive motion and any supporting affidavits. *See id.* at 4.

At this time, the DOJ has not supplied this Court with specific facts to justify the entry of a protective order barring all discovery in this case. *See Nat'l Children's Ctr.*, 98 F.3d at 1410; *Campbell*, 231 F. Supp. 2d at 7 (citations omitted). The DOJ has not yet, for instance, filed a motion for summary judgment or a *Vaughn* index, so this Court cannot conclude that discovery would be "unnecessary and impermissible." *Bureau of Nat'l Affairs*, 24 F. Supp. 2d at 92. Furthermore, this Court is unable to determine whether Mr. Jordan's discovery request might cause "annoyance, embarrassment, oppression, or undue burden or expense" because the specific request has not been produced for the Court. Fed. R. Civ. P. 26(c); *see* Def.'s Mem. at 1. Therefore, this Court denies the DOJ's motion without prejudice.[8] However, the DOJ need not respond to Mr. Jordan's written discovery request until the record in this matter is sufficiently developed to allow the Court to determine that this is the rare FOIA action in which discovery is appropriate.

---

motion for summary judgment has been filed so this Court cannot evaluate whether discovery would be inappropriate.

[8] The DOJ may renew its motion for a protective order upon satisfying the requirements of Rule 26(c).

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the DOJ's motion for a thirty-day extension of time to answer or otherwise respond to the complaint (ECF No. 6).  However, the Court **DENIES** Mr. Jordan's request that this judge disqualify himself (ECF No. 9) and the DOJ's motion for a protective order barring all discovery in this case (ECF No. 14).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 8, 2018                                                                        RUDOLPH CONTRERAS
                                                                                                              United States District Judge