**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JACK JORDAN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 17-2702 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 71, 74, 75, 78, 80, |
| | : | | 81, 82, 89, 90 |
| U.S. DEPARTMENT OF JUSTICE, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING PLAINTIFF'S MOTIONS FOR RECONSIDERATION; DENYING PLAINTIFF'S MOTION
FOR SANCTIONS; DENYING PLAINTIFF'S DEMAND FOR EVIDENCE; DENYING PLAINTIFF'S
MOTION FOR CLARIFICATION; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION TO STRIKE;
GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT;
AND GRANTING DEFENDANT'S MOTION TO AMEND**

**I. INTRODUCTION**

In this case arising under the Freedom of Information Act ("FOIA"), 5 U.S.C § 552,

Plaintiff Jack Jordan seeks documents from the Department of Justice. In a recently concluded

FOIA action against the U.S. Department of Labor ("DOL"), Jordan sought the release of emails

sent by DynCorp International employees Darin Powers and Robert Huber. *See Jordan v. U.S.*

*Dep't of Lab.*, 273 F. Supp. 3d 214, 220–21 (D.D.C. 2017). He wanted the emails because they

related to an administrative proceeding before a DOL Administrative Law Judge in which he was

representing his wife (a DynCorp employee) who suffered an on-the-job injury. *See id.* at 219–

20. After Jordan submitted a FOIA request for the emails, the DOL withheld them under FOIA

Exemption 4. *Id.* at 226. Jordan filed suit, and, after *in camera* inspection, this Court affirmed

the DOL's withholding of the Powers email but concluded that the Huber email was not

protected by any exemption and ordered the agency to release it. *See id.* at 232; *Jordan v. U.S.*

*Dep't of Lab.*, 308 F. Supp. 3d 24, 43–44 (D.D.C. 2018).  On appeal, the D.C. Circuit summarily

affirmed this Court's ruling.  *Jordan v. U.S. Dep't of Lab.*, No. 18-5128, 2018 WL 5819393, at

*1 (D.C. Cir. Oct. 19, 2018) (per curiam).

       Jordan subsequently submitted a request to the U.S. Department of Justice ("DOJ") for a

copy of "any record . . . that establishes the amount of time expended" defending the DOL

against his prior FOIA action or regarding Jordan himself.  Compl. ¶ 5, ECF No. 1.  Jordan

further requested records pertaining to himself, the undersigned judge, or the DOL records at

issue in his prior litigation that were "created by or received by" attorneys at the United States

Attorney's Office for the District of Columbia.  *Id.*  Specifically, Jordan's request pertained to

then-U.S. Attorney Jessie Liu, former Acting U.S. Attorney Channing D. Phillips, the Chief of

the Civil Division, and the Assistant U.S. Attorney who handled his prior FOIA litigation.  *Id.*

Jordan brought the instant action alleging that the DOJ had unlawfully withheld records under

FOIA.  *Id.*  The DOJ's Executive Office for United States Attorneys ("EOUSA") ultimately

processed Jordan's request and released the requested records but withheld some under FOIA

Exemptions 4, 5, and 6.  *See* Hudgins Decl. ¶ 15, ECF No. 71-3; *Vaughn* Index, ECF No. 72.

The withholdings are documented in the DOJ's *Vaughn* index.  *See Vaughn* Index.  The index is

accompanied by an affidavit signed by EOUSA attorney Natasha Hudgins.  *See* Hudgins Decl.

       Both the DOJ and Jordan move for summary judgment.  *See* Mem. Supp. Def.'s Mot.

Summ. J. ("Def.'s Mot. Summ. J."), ECF No. 71-2; Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. and

Supp. Pl.'s Mot. Partial Summ. J. ("Pl.'s Mot. Summ. J."), ECF No. 82-1.  Jordan also moves for

reconsideration, Pl.'s Mot. Reconsider, ECF No. 74; Pl.'s Mot. Reconsider, ECF No. 81,[1]

---

[1] Jordan renews arguments in his motions for reconsideration that the Court has
repeatedly denied.  *See, e.g.*, *Jordan v. U.S. Dep't of Just.*, 315 F. Supp. 3d 584, 589 (D.D.C.
2018) (denying recusal motion); Min. Order (Jan. 27, 2021) (denying motion to reconsider that

sanctions, Pl.'s Mot. Sanctions, ECF No. 75,[2] clarification, Pl.'s Mot. Clarification, ECF No. 80,[3] and to strike four of the DOJ's filings, Pl.'s Mot. Strike, ECF No. 90.  He submits a demand for evidence too.  *See* Pl.'s Demand Evid., ECF No. 78.[4]  Lastly, the DOJ seeks to amend its answer.  *See* Def.'s Mot. Amend Answer, ECF No. 89.

## II.  ANALYSIS

### A.  Jordan's Motion to Strike

Jordan moves to strike the DOJ's *Vaughn* index, the DOJ's combined reply in support of its summary judgment motion and opposition to Jordan's motions for summary judgment and sanctions, the DOJ's response to Jordan's statement of facts, and the DOJ's motion to amend its answer to the complaint.  *See* Pl.'s Mot. Strike at 1; *see also Vaughn* Index; Def.'s Reply Supp.

---

accused the undersigned judge of "criminally concealing" an email, *see* Pl.'s Mot. Reconsider at 7, ECF No. 79).  He has raised no new, nonfrivolous argument, and the criminal statutes he cites are inapplicable in this civil case.  His motion is denied.

[2] Jordan requests that the Court sanction Hudgins and DOJ counsel for submitting Hudgins's declaration in bad faith.  *See* Pl.'s Mem. Supp. Mot. Sanctions at 18, ECF No. 75-1; *see also* Fed. R. Civ. P. 56(h).  He claims that the declaration is based on perjury, but he offers no evidence beyond conclusory assertions to support that claim.  *See, e.g.*, Pl.'s Mem. Supp. Mot. Sanctions at 18.  He does not establish, for instance, that the declaration "directly contradicted previous sworn testimony" or that the DOJ filed it "for the sole purpose of delaying" proceedings.  *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2742 (4th ed. 2021) (describing situations when "courts have resorted to Rule 56(h)" sanctions).  Because Jordan's motion for sanctions is baseless, it is denied.

[3] "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend."  *United States v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 315 F. Supp. 3d 90, 99 (D.D.C. 2018) (citation omitted).  But rather than raise a genuine question over "the scope of a ruling," *id.*, Jordan's purported "motion for clarification" reiterates the same accusations and arguments he makes in many of his other filings.  *See generally* Pl.'s Mot. Clarification.  The Court does not need to elaborate on the order Jordan supposedly seeks clarification of, *see id.* at 1—it denied one of his previous motions for reconsideration because he raised no "nonfrivolous argument under the Constitution" and cited criminal statutes that were "inapplicable in this civil case."  *See* Min. Order (Jan. 27, 2021).  There is nothing to add to that order, so Jordan's motion for clarification is denied.

[4] Jordan makes his demand for evidence pursuant to Federal Rule of Criminal Procedure 16.  This case is a civil proceeding, so that rule is inapplicable.  His demand is denied.

Def.'s Mot. Summ. J. and Opp'n Pl.'s Cross-Mot. Summ. J. and Mot. Sanctions, ECF Nos. 86,
87; Def.'s Resp. Pl.'s Statement of Undisputed Material Facts, ECF No. 88; Def.'s Mot. Amend
Answer.

Jordan first asserts that the DOJ submitted three of the filings late and improperly had a
court employee enter them on the docket. *See* Pl.'s Mot. Strike at 3–4, 9–13. But his claim that
the DOJ did not comply with this Court's orders and local rules regarding the submission of
electronic filings fails upon examination. On March 1, 2021, when DOJ counsel attempted to
file the documents, the Court's ECF system was undergoing maintenance. *See* Def.'s Combined
Reply Supp. Mot. Amend. Answer and Opp'n Pl.'s Mot. Strike at 4, ECF No. 93. As a result,
counsel was unable to log in and submit the filings. *Id.* DOJ counsel subsequently emailed the
filings to the Clerk of Court's office and copied Jordan. *Id.* Local Civil Rule 5.4(g)(4) permits a
"filer encountering technical problems with a CM/ECF filing" to submit their filings to the
Clerk's Office. As the Court articulated in its last encounter with Jordan, "the decision to grant
or deny a motion to strike is vested in the trial judge's sound discretion." *Jordan*, 273 F. Supp.
3d at 228 n.17 (quoting *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7 (D.D.C.
2004)). The Court rejects Jordan's theory for striking three of the DOJ's filings.

Jordan also moves to strike the DOJ's *Vaughn* index because it is unsigned and appears
as a separate ECF entry from the DOJ's summary judgment motion. *See* Pl.'s Mot. Strike at 1–2,
11. To be sure, attorneys must sign filings, motions, and other papers that they submit to a court.
*See* Fed. R. Civ. P. 11(a). But although the DOJ's *Vaughn* index is unsigned, the agency
submitted its index at the same time as its motion for summary judgment and the accompanying
Hudgins declaration. The DOJ's motion relies on the *Vaughn* index to justify the withholdings,
*see* Def.'s Mot. Summ. J. at 2, 9, 13–15, while the declaration "consists of . . . information

supporting the *Vaughn* Index," *see* Hudgins Decl. ¶ 4, and even purports to "incorporate[]" the "attached" index, *id.* ¶¶ 17, 21.  Counsel for the DOJ signed the summary judgment motion, *see* Def.'s Mot. Summ. J. at 15, so he complied in substance with the rule that attorneys sign their filings.  Even though agencies typically file *Vaughn* indices as attachments or exhibits to a motion, penalizing the DOJ for submitting its index as a separate ECF entry would elevate form over substance to an absurd degree.  The Court will not throw out the DOJ's *Vaughn* index just because it happened to be in a different ECF entry from the motion and declaration it was clearly associated with.[5]

## B.  The DOJ's Motion to Amend

The DOJ moves to amend its answer to include the affirmative defense of collateral estoppel.  *See* Def.'s Mot. Amend Answer at 1.  Specifically, it claims that Jordan is collaterally estopped from relitigating issues resolved in his prior FOIA action against the DOL.  *See id.*; *see also* Def.'s Mot. Summ. J. at 7–8.

Rule 15(a) governs the amendment of pleadings.  It states that "[t]he court should freely give leave" for a party to amend its pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has discretion to grant or deny leave to amend a pleading.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).  But unless there is a good reason for denying leave—such as undue delay or prejudice to the opposing party—"the leave sought should, as the rules require, be 'freely given.'"  *Id.*; *see also Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999).

---

[5] Jordan requests attorneys' fees for the time he spent on his motion to strike.  Pl.'s Mot. Strike at 17–20.  Because he does not prevail on his meritless motion to strike, the Court denies the request.  Even if Jordan had prevailed, however, he would still not be entitled to fees.  *See Apton v. Volkswagen Grp. of Am., Inc.*, 233 F. Supp. 3d 4, 19 (D.D.C. 2017) ("[P]ro se litigant lawyers cannot recover fees for actions that they have brought on their own behalf, no matter how talented and typically well-compensated that lawyer might be when working on behalf of a client.").

Here, permitting the DOJ's proposed amendment would promote the purpose of pleading under the Federal Rules of Civil Procedure, which is "to facilitate a proper decision on the merits," not to set the stage for "a game of skill in which one misstep by counsel may be decisive to the outcome." *See Foman*, 371 U.S. at 181–82 (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). Jordan seeks to avoid adjudication of the collateral estoppel issue by technicality, as evidenced by his focus on the DOJ's delay in seeking leave to amend. *See* Pl.'s Opp'n Def.'s Mot. Amend Answer at 22–24, ECF No. 91. But "Rule 15 allows for amendment 'whereby a party who harmlessly failed to plead an affirmative defense may find satisfaction' rather than allowing the party to lose because of a minor technical mistake made in its original pleading." *Morgan v. FAA*, 262 F.R.D. 5, 8 (D.D.C. 2009) (quoting *Harris v. Sec'y, U.S. Dep't of Veterans Affs.*, 126 F.3d 339, 343 (D.C. Cir. 1997)). Granting the DOJ leave to amend will not cause undue delay or prejudice to Jordan, as he has already opposed the substance of the agency's affirmative defense in responding to its summary judgment motion. *See* Pl.'s Mot. Summ. J. at 26–34. The DOJ's motion for leave to amend is granted.

### C. The Parties' Cross-Motions for Summary Judgment

FOIA "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)); *see also Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017) ("Congress enacted FOIA to give the public 'access to official information long shielded unnecessarily from public view.'" (quoting *Nat'l Ass'n of Crim. Def. Laws. v. U.S. Dep't of Just. Exec. Off. for U.S. Att'ys*, 829 F.3d 741, 744 (D.C. Cir. 2016))). "The Act requires government agencies to make information available upon request, unless the information is protected by one

of nine statutory 'exemptions.'" *Jud. Watch*, 847 F.3d at 738 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975)); *see also* 5 U.S.C. § 552(b).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Prop. of the People, Inc. v. Off. of Mgmt. and Budget*, 330 F. Supp. 3d 373, 380 (D.D.C. 2018) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 87 (D.D.C. 2009)). To be entitled to summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA suit, a government agency is "entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates 'that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information.'" *Prop. of the People*, 330 F. Supp. 3d at 380 (quoting *Competitive Enter. Inst. v. U.S. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017)). "This burden does not shift even when the requester files a cross-motion for summary judgment because the Government ultimately has the onus of proving that the documents are exempt from disclosure, while the burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur." *Id.* (internal quotation marks omitted) (quoting *Hardy v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 243 F.Supp.3d 155, 162 (D.D.C. 2017)).

Here, the DOJ is largely entitled to summary judgment. No material facts are genuinely in dispute. The agency demonstrated that it conducted an adequate search and that the relevant exemptions apply to almost all the withheld materials. It has disclosed nearly all nonexempt and segregable records. The exception is publicly available contact information for people whose identities are apparent from the disclosed documents. The DOJ must disclose that information.

1.  Adequacy of the DOJ's Search

When it comes to assessing an agency's search for responsive records, the fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see, e.g.*, *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  The agency must show that it made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (quoting *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).

"[I]n response to a challenge to the adequacy of its search for requested records[,] the agency may meet its burden by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched."  *Iturralde*, 315 F.3d at 313–14 (omission in original) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  The FOIA plaintiff may then produce any contradicting evidence.  *Id.*  "[I]f a review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' summary judgment is inappropriate."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979)).

According to Hudgins's declaration,[6] EOUSA asked the D.C. U.S. Attorney's Office to search for any records responsive to Jordan's FOIA request because that office was responsible for defending the DOL against Jordan's previous lawsuit.  Hudgins Decl. ¶ 8.  U.S. Attorney's Office personnel searched the emails of the employees mentioned in Jordan's request letter for terms like "Jack Jordan" and "Contreras."  *Id.* ¶ 9.  The Assistant U.S. Attorney assigned to Jordan's prior action against the DOL made the entire casefile for that action available for production, including emails, notes, motions, pleadings, and drafts.  *Id.*

Plaintiff never indicated to EOUSA any concern with the method of search, nor has he produced evidence that calls into question the adequacy of search.  He instead claims that the Hudgins's declaration is conclusory.  *See* Pl.'s Mot. Summ. J. at 10–11.  This charge itself is conclusory, as Jordan neglects to develop his argument in any meaningful way.  Accordingly, the DOJ is entitled to summary judgment with respect to EOUSA's search.

### 2. The DOJ's Withholdings Under Exemptions 4, 5, and 6

FOIA allows agencies to exempt information that falls within certain enumerated parameters.  To meet its burden and qualify for an exemption, the agency may "rely on

---

[6] Jordan attacks Hudgins's declaration as violating the requirement that affidavits in support of a summary judgment motion be "made on personal knowledge."  *See* Fed. R. Civ. P. 56(c)(4); *see also, e.g.*, Pl.'s Mot. Strike at 9–10, 15–16; Pl.'s Mot. Summ. J. at 12–15.  But Hudgins explained in her declaration that, as an EOUSA attorney-advisor, she is "familiar with the procedures followed by EOUSA in responding to FOIA requests generally as well as the actions that EOUSA has taken in response to the FOIA request submitted by" Jordan.  Hudgins Decl. ¶ 3.  She also said that she based her declaration "on [her] review of the official files and records of EOUSA, [her] own personal knowledge, and information [she] acquired through the performance of [her] official duties."  *Id.*  There is thus no personal knowledge problem with Hudgins's declaration.  FOIA declarants can source statements in a declaration from personal knowledge, information relayed from agency colleagues, and other information acquired in the course of their official duties.  *See DiBacco v. Dep't of the Army*, 926 F.3d 827, 833 (D.C. Cir. 2019); *Emuwa v. U.S. Dep't of Homeland Sec.*, No. 20-cv-01756, 2021 WL 2255305, at *7 (D.D.C. June 3, 2021).

declarations that are reasonably detailed and non-conclusory." *Pinson v. Dep't of Just.*, 313 F. Supp. 3d 88, 106 (D.D.C. 2018).  Such declarations must "provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Elec. Priv. Info. Ctr. v. U.S. Drug Enf't Agency*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (citations omitted). But exemptions must also be "narrowly construed." *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007).  Agencies "cannot justify . . . withholdings on the basis of summary statements that merely reiterate legal standards or offer 'far-ranging category definitions for information.'" *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4, 13 (D.D.C. 2013) (quoting *King v. U.S. Dep't of Just.*, 830 F.2d 210, 221 (D.C. Cir. 1987)).

"The justification for withholding information is typically contained in a declaration or affidavit referred to as a 'Vaughn index' after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)." *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 226 (D.D.C. 2014).  A *Vaughn* index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 n.9 (D.C. Cir. 1986).  *Vaughn* indexes, like all agency affidavits, receive a presumption of good faith.  *See SafeCard Servs., Inc., v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Here, the DOJ claims that Exemptions 4, 5, and 6 allow it to withhold the records responsive to Jordan's latest FOIA request.

*a.  Exemption 4 and Collateral Estoppel*

The DOJ claims Exemption 4 to withhold the Powers email that was at issue in Jordan's litigation with the DOL.  *See* Hudgins Decl. ¶¶ 28–29.  It just so happens that the Assistant U.S. Attorney who represented the DOL had a copy of the email.  *See id.* ¶ 28.  Jordan attacks the DOJ's use of Exemption 4 to protect the email just as he did when the DOL claimed the same exemption.  *See* Pl.'s Mot. Summ. J. at 26–34.  The DOJ retorts that collateral estoppel prevents Jordan from taking another bite at the apple.  *See* Def.'s Mot. Summ. J. at 7–8.

The DOJ is right.  Collateral estoppel bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment." *Gulf Power Co. v. FCC*, 669 F.3d 320, 323 (D.C. Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)).  For a movant to invoke collateral estoppel, he must show the following: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination."  *Martin v. U.S. Dep't of Just.*, 488 F.3d 446, 454 (D.C. Cir. 2007) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)).

Collateral estoppel plainly bars Jordan from relitigating Exemption 4's application to the Powers email.  Jordan raised that exact issue in his previous suit against the DOL, and this Court squarely held that Exemption 4 protected the email from disclosure.  *See Jordan*, 273 F. Supp. 3d at 232.  Moreover, it is not unfair to bind Jordan to the Court's previous judgment; in fact, it would be unfair to require the DOJ to debate an issue already decided.  *See Consol. Edison Co. of N.Y. v. Bodman*, 449 F.3d 1254, 1258 (D.C. Cir. 2006) ("The law of collateral estoppel . . . is

intended to protect the parties from the burden of relitigating the same issue following a final

judgment and to promote judicial economy by preventing needless litigation." (citations

omitted)).  Importantly, collateral estoppel does not require the parties to be the same so long as

the issue is.  *See Peavey v. United States*, 846 F. Supp. 2d 10, 15 (D.D.C. 2012).

The DOJ is thus owed summary judgment as to the propriety of withholding the Powers

email under Exemption 4.

### b. Exemption 5

The DOJ withholds other materials under Exemption 5.  *See* Hudgins Decl. ¶¶ 22–26.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be

available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  The

exemption covers documents "normally privileged in the civil discovery context," *Jud. Watch,*

*Inc. v. U.S. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004), such as materials shielded by

the attorney-client privilege, the attorney work-product privilege, and "what is sometimes called

the 'deliberative process' privilege," *see U.S. Dep't of the Interior v. Klamath Water Users*

*Protective Ass'n*, 532 U.S. 1, 8 (2001).  The DOJ says that it withheld records under the work

product doctrine and the deliberative process privilege.

### i. Work-Product Privilege

To begin, the DOJ asserted the work-product privilege over "draft pleadings and email

communications" between the Assistant U.S. Attorneys who worked on Jordan's previous case

and DOL attorneys.  *See* Hudgins Decl. ¶ 23.  The attorney work-product doctrine protects "the

mental impressions, conclusions, opinions, or legal theories of an attorney," as well as "factual

materials prepared in anticipation of litigation."  *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C.

Cir. 1997). This rule is rooted in the principle that "it is essential that a lawyer work with a

certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).

The work-product test considers "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *FTC v. Boehringer Ingelheim Pharms. Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (emphasis added) (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)).  The agency must establish that the records were created with "a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998).  Under this test, the agency must establish the following factors to justify its withholding: "(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis v. U.S. Dep't of Just.*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016).

The Court finds that the DOJ properly withheld the records pursuant to the attorney work-product privilege.  First, the DOJ has provided "a description of the nature of and contents of the withheld document[s]." *See id.*  As mentioned, the agency explains in Hudgins's declaration that the withheld records are comprised of "draft pleadings and email communications" between attorneys at the U.S. Attorney's Office and the DOL.  Hudgins Decl. ¶ 23.  Furthermore, each entry of the DOJ's *Vaughn* index includes a description of the withheld document that, while brief in some cases, provides a sufficiently detailed description of its contents.  *See generally Vaughn* Index.

13

Second, the DOJ has adequately "identif[ied] [each] document's author or origin."  *See Ellis*, 110 F. Supp. 3d at 108.  Each entry of the DOJ's *Vaughn* index specifies or describes the relevant document's author or authors.  *See, e.g.*, *Vaughn* Index at 4 ("Emails between AUSAs in USAO DC"); *id.* at 7 ("Internal USAO-DC and interagency emails with Daniel Van Horn about the handling of 3rd party cases not related to Jordan or the Jordan litigation.").  Although some of the agency's author descriptions are generic, a *Vaughn* index does not need to name names for a court to be able to assess whether the author created the document in anticipation of litigation.  *See, e.g.*, *Butt v. U.S. Dep't of Just.*, No. 19-cv-504, 2020 WL 4436434, at *10 (D.D.C. Aug. 3, 2020) (approving a description that read "Emails between AUSAs regarding co-defendants and motions in opposition strategies").  The documents so clearly fall within the protections of the work-product doctrine—they are communications among attorneys made while litigating in federal court—that providing further detail would serve no legitimate purpose.

Third, the DOJ's *Vaughn* index provides enough information to give the Court an idea of "the circumstances that surround[ed each] document's creation."  *See Ellis*, 110 F. Supp. 3d at 108; *see also, e.g.*, *Vaughn* Index at 7 ("Redacted government discussion for potential response regarding Plaintiff's potential bar complaint threats.").

Fourth, the DOJ has "provide[d] some indication of the type of litigation for which the document's use is at least foreseeable."  *See Ellis*, 110 F. Supp. 3d at 108.  Here, Assistant U.S. Attorneys and DOL attorneys produced the exempted draft pleadings and emails during Jordan's prior suit with the DOL.  Hudgins Decl. ¶ 23.  Each entry of the DOJ's *Vaughn* index that invoked the attorney work-product privilege indicated that the documents were produced for that litigation.  *See, e.g.*, *Vaughn* Index at 6 (describing emails "discussing Jordan litigation matter").

These documents are classic attorney work-product, and disclosure would put on display the thoughts and strategies of counsel representing the DOL.  *See Hickman*, 329 U.S. at 510 ("Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties.").  There is no doubt that the materials were created "because of the prospect of litigation," *see Boehringer Ingelheim Pharms.*, 778 F.3d at 149 (citation omitted)—they consist of draft pleadings and attorney communications discussing Jordan's prior lawsuit, *see* Hudgins Decl. ¶ 23.  The Court holds that the attorney work-product privilege applies to the withheld pleadings and communications.  The DOJ thus properly withheld the documents pursuant to Exemption 5

### ii.  Deliberative Process Privilege

The DOJ next claims that the deliberative process privilege permitted it to withhold emails between Assistant U.S. Attorneys and DOL attorneys "analyzing the facts and strategy in defending" against Jordan's suit as well as "draft documents and pleadings where the draft differed from the final filing produced."  Hudgins Decl. ¶ 26.[7]  "The deliberative process privilege protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Loving v. Dep't of Def.*, 550 F.3d 32, 38 (D.C. Cir. 2008) (quoting *Klamath Water Users*, 532 U.S. at 8).  The privilege exists "to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government."  *Klamath Water*

---

[7] Though unclear, it appears that the DOJ claims both the work-product privilege and the deliberative process privilege for the same records.  *See generally Vaughn* Index.  The Court evaluates both privilege claims in case there is a difference in what the agency withholds under each privilege.  But to the extent the agency claims both privileges for the same information, each privilege would be sufficient on its own to justify withholding that information.

*Users*, 532 U.S. at 9 (citations omitted).  It "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front-page news."  *Id.* at 8–9.

"To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment."  *Prop. of the People*, 330 F. Supp. 3d at 380 (emphasis omitted) (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992)).  A document qualifies if it is both predecisional and deliberative.  *E.g.*, *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006).  Predecisional communications are those that "occurred before any final agency decision on the relevant matter."  *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014).  "[T]he term 'deliberative' does not add a great deal of substance to the term 'pre-decisional,'" but it "in essence" means "that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue."  *Id.*  Both analyses and draft documents can fall within the scope of the deliberative process privilege as long as each claim is supported by the "relatively detailed justification" that FOIA requires.  *See Mead Data Cent.*, 566 F.2d at 251.

The DOJ properly justified its withholdings under the deliberative process privilege.  Communications exchanging the correspondents' ideas on strategy going forward consist of the kinds of "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinion of the writer rather than the policy of the agency" that the deliberative process privilege is meant to protect.  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  Revealing these strategic exchanges over how to proceed with a litigation would "inaccurately reflect or prematurely disclose the views of the agency" and would likely give staff pause before candidly putting such exchanges in writing in

16

the future.  *See id.*  The same goes for the draft documents and pleadings.  A draft document "is, by definition, a preliminary version of a piece of writing subject to feedback and change."  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021).  Disclosing the drafts at issue here would divulge deliberations over how to present the DOL's best case.  *See Hardy*, 243 F. Supp. 3d at 174 ("[D]isclosure of the 'Survey Draft' would divulge information regarding decisions to insert or delete material or to change the draft's focus or emphasis and thus would stifle the creative thinking and candid exchange of ideas necessary to produce good work." (cleaned up) (citation omitted)).

Accordingly, the Court awards summary judgment to the DOJ with respect to its Exemption 5 withholdings.

### iii.  Exemption 6

Finally, the DOJ withholds under Exemption 6 "the names, identifying information, direct telephone numbers, and email addresses relating to third parties, government attorneys, and government personnel involved in Jordan's prior litigation."  Def.'s Mot. Summ. J. at 13; *see also* Hudgins Decl. ¶ 20.  Exemption 6 applies to information about individuals in "personnel and medical files and similar files" when that information, if disclosed, "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The exemption protects even "bits of personal information, such as names and addresses."  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (cleaned up) (quoting *Jud. Watch*, 449 F.3d at 152).  A court evaluating an Exemption 6 claim balances "the privacy interest that would be compromised by disclosure against any public interest in the requested information."  *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  The public interest encompasses only "the extent to which disclosure of the information sought would shed light on

an agency's performance of its statutory duties or otherwise let citizens know what their
government is up to." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (cleaned up)
(quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994))

The information the DOJ withholds is that "which can be identified as applying to [an]
individual" and therefore constitutes "personnel" or "similar files" under Exemption 6.  *See U.S.
Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601–02 (1982); *see also Jud. Watch*, 449 F.3d at
198 (rejecting the argument that "names and addresses" of agency personnel and private
individuals are not protected under Exemption 6).  And while an agency employee does not
always have a strong privacy interest in information like his name or professional contact
information, the "privacy interest at stake may vary depending on the context in which it is
asserted."  *See Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996).
Jordan "has a history of sending harassing emails" to government employees accusing them of
misconduct.  Hudgins Decl. ¶ 20; *see, e.g.*, *id.* Ex. C (consisting of an email that Jordan wrote to
government lawyers as well as orders from a similar case in the Western District of Missouri that
sanctioned Jordan after he accused a judge of misconduct and repeatedly disobeyed court
orders).  The individuals named in the withheld records thus have an obvious and strong privacy
interest in keeping their identities and contact information from Jordan.  *See Bernegger v. Exec.
Off. for U.S. Att'ys*, 334 F. Supp. 3d 74, 89 (D.D.C. 2018) (finding that agency staff and third
parties had privacy interests in their "names, addresses, and telephone numbers . . . and other
personally identifiable information" when the agency showed "there [wa]s reason to believe"
that the requester would "harass" or "retaliate" against them (cleaned up)); *cf. White Coat Waste
Project v. U.S. Dep't of Veterans Affs.*, 404 F. Supp. 3d 87, 101 (D.D.C. 2019) (explaining that,
while "Exemption 6 does not apply to business judgments and relationships," an agency

employee's name was included in the "similar files" category because there was a concern that the employee would "be subjected to possible harassment").

On the other side of the scale, Jordan has provided no argument for how the release of the withheld information would allow him to better understand any conduct by any government agency. *See* Pl.'s Mot. Summ. J. at 23–25. That makes the balancing exercise an easy one. *See Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("We have been shown no public interest in . . . disclosure. . . . We need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time." (omission in original) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989))). "[I]nformation about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct" is not the type of information to which FOIA permits access. *Fed. Lab. Rels. Auth.*, 510 U.S. at 496 (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)).

Jordan nevertheless argues that the DOJ improperly withheld certain information that is publicly available on the internet. *See* Pl.'s Mot. Summ. J. at 24. He points out that the U.S. Attorney's Office and a law firm have disclosed on their websites the contact information for some of the individuals who wrote or received the withheld documents. *Id.*; *see also* Pl.'s Mot. Sanctions, Ex. 3, ECF No. 75-4 (management directory for the U.S. Attorney's Office). Jordan is correct that the DOJ cannot withhold contact information that is already public. *See Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999) ("[T]he 'logic of FOIA' postulates that an exemption can serve no purpose once information . . . becomes public . . . ." (citation omitted)); *Hall & Assocs. v. U.S. EPA*, No. 19-cv-1095, 2020 WL 4673411, at *5 (D.D.C. Aug. 12, 2020)

("Publicly available email addresses . . . do not implicate a privacy interest protected by Exemption 6."). But the agency need not disclose any "more than what is publicly available." *See Cottone*, 193 F.3d at 555. There is "a long line of cases recognizing that individuals maintain an interest in their privacy even where some information is known about them publicly." *See Barnard v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 12 (D.D.C. 2009) (collecting cases). Furthermore, the agency does not need to disclose an individual's contact information if doing so would reveal that person's identity and make them a target for harassment. *Cf. Long v. ICE*, 279 F. Supp. 3d 226, 244 (D.D.C. 2017) ("[W]ithholding a telephone number or e-mail address, alone, is not sufficient to protect [a privacy interest in avoiding harassment]; alternate means of contacting and harassing these employees would be readily discoverable on the Internet if this court ordered their names disclosed."). To the extent the DOJ withholds publicly available contact information for individuals already identified in the responsive records (whether by disclosure or by a description in the DOJ's *Vaughn* index), however, it must release that information to Jordan. *See, e.g.*, Pl.'s Mot. Sanctions, Ex. 1, ECF No. 75-2 (identifying Civil Division Chief Daniel Van Horn as an email's recipient but redacting his email, which is publicly available, *see* Pl.'s Mot. Sanctions, Ex. 3).

With that small exception, the Court awards summary judgment on the Exemption 6 withholdings to the DOJ.

### 3.  Segregability

Finally, a court must consider whether an agency has produced all segregable, nonexempt information. *See Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010). The agency can fulfill its obligation through a sworn declaration from an agency official. *Milton v. U.S. Dep't of Just.*, 842 F. Supp. 2d 257, 260 (D.D.C. 2012) ("An affidavit stating that an agency

official conducted a review of each document and how she determined that no document contains segregable information fulfills the agency's obligation."). In her affidavit, Hudgins writes that "each page was individually examined line-by-line by members of the Staff to identify non-exempt information which could be reasonably segregated and released." Hudgins Decl. ¶ 31. Further, she "personally conducted a second line-by-line review of each page of potentially responsive records." *Id.* Her statement satisfies the DOJ's obligation to demonstrate that it has segregated and released what nonexempt information it could.

## III. CONCLUSION

For the foregoing reasons, Jordan's motions for reconsideration (ECF Nos. 74, 81) are **DENIED**, Jordan's motion for sanctions (ECF No. 75) is **DENIED**; Jordan's demand for evidence (ECF No. 78) is **DENIED**; Jordan's motion for clarification (ECF No. 80) is **DENIED**; Jordan's motion for partial summary judgment (ECF No. 82) is **GRANTED IN PART AND DENIED IN PART**; and Jordan's motion to strike (ECF No. 90) is **DENIED**. The DOJ's motion for summary judgment (ECF No. 71) is **GRANTED IN PART AND DENIED IN PART** and the DOJ's motion to amend its answer (ECF No. 89) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.[8]

---

[8] Almost every time the Court has ruled on one of Jordan's motions during this litigation, he has challenged the decision with frivolous motions for reconsideration that relitigated already-rejected arguments instead of raising overlooked ones. *See, e.g.*, Pl.'s Mot. Reconsider, ECF No. 53 (requesting reconsideration of an order denying a motion to compel the production of the Powers email); Pl.'s Mot. Reconsider, ECF No. 65 (asking the Court to reconsider orders denying relief from judgment in the DOL case, denying an earlier motion for reconsideration, and denying a motion to force the DOJ to release the withheld the emails at the heart of the DOL case). Any objection to this order should be the subject of an appeal, not a reconsideration motion. If Jordan files another repetitive reconsideration motion, he will be met with a financial sanction. *See Smith v. Scalia*, 44 F. Supp. 3d 28, 45 (D.D.C. 2014) ("Rule 11 provides certain bases for the imposition of sanctions, including that a party's legal contentions are frivolous or unwarranted under existing law, or that the claims have been presented for an improper purpose such as harassment."), *aff'd*, No. 14-5180, 2015 WL 13710107 (D.C. Cir. Jan. 14, 2015); *cf.*

Dated: September 3, 2021                                    RUDOLPH CONTRERAS
                                                            United States District Judge

---

*Robertson v. Cartinhour*, 711 F. Supp. 2d 136, 138–39 (D.D.C. 2010) (imposing costs of $1,887 for filing a reconsideration motion that was unreasonable in light of existing precedent).